# RHINES *v.* WEBER, WARDEN

No. 03–9046.   Argued January 12, 2005—Decided March 30, 2005

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and STEVENS, SCALIA, KENNEDY, THOMAS, GINSBURG, and BREYER, JJ., joined. STEVENS, J., filed a concurring opinion, in which GINSBURG

and BREYER, JJ., joined, *post*, p. 279.   SOUTER, J., filed an opinion concurring in part and concurring in the judgment, in which GINSBURG and BREYER, JJ., joined, *post*, p. 279.

*Roberto A. Lange,* by appointment of the Court, 543 U. S. 806, argued the cause and filed briefs for petitioner.

*Lawrence E. Long,* Attorney General of South Dakota, argued the cause for respondent.   With him on the brief was *Craig M. Eichstadt,* Deputy Attorney General.*

JUSTICE O'CONNOR delivered the opinion of the Court.

We confront here the problem of a "mixed" petition for habeas corpus relief in which a state prisoner presents a federal court with a single petition containing some claims that have been exhausted in the state courts and some that have not.   More precisely, we consider whether a federal district court has discretion to stay the mixed petition to allow the petitioner to present his unexhausted claims to the state

---

*A brief of *amicus curiae* urging reversal was filed for the National Association of Criminal Defense Lawyers by *Pamela Harris* and *David M. Porter.*

A brief of *amici curiae* urging affirmance was filed for the State of California et al. by *Bill Lockyer,* Attorney General of California, *Manuel M. Medeiros,* State Solicitor General, *Robert R. Anderson,* Chief Assistant Attorney General, *Pamela C. Hamanaka,* Senior Assistant Attorney General, *Donald E. de Nicola* and *Paul M. Roadarmel, Jr.,* Deputy Attorneys General, and *Christopher L. Morano,* Chief State's Attorney of Connecticut, and by the Attorneys General for their respective States as follows: *Troy King* of Alabama, *Terry Goddard* of Arizona, *Mike Beebe* of Arkansas, *M. Jane Brady* of Delaware, *Thurbert E. Baker* of Georgia, *Mark J. Bennett* of Hawaii, *Lawrence G. Wasden* of Idaho, *Steve Carter* of Indiana, *J. Joseph Curran, Jr.,* of Maryland, *Thomas F. Reilly* of Massachusetts, *Jim Hood* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Mike McGrath* of Montana, *Jon Bruning* of Nebraska, *Brian Sandoval* of Nevada, *Kelly A. Ayotte* of New Hampshire, *Patricia A. Madrid* of New Mexico, *Eliot Spitzer* of New York, *Wayne Stenehjem* of North Dakota, *Jim Petro* of Ohio, *Gerald J. Pappert* of Pennsylvania, *Paul G. Summers* of Tennessee, *Mark L. Shurtleff* of Utah, *Jerry W. Kilgore* of Virginia, *Darrell V. McGraw, Jr.,* of West Virginia, and *Patrick J. Crank* of Wyoming.

court in the first instance, and then to return to federal court for review of his perfected petition.

## I

Petitioner Charles Russell Rhines was convicted in South Dakota state court of first-degree murder and third-degree burglary and sentenced to death. His conviction became final on December 2, 1996, when we denied his initial petition for certiorari. *Rhines* v. *South Dakota,* 519 U. S. 1013. On December 5, 1996, Rhines filed a petition for state habeas corpus. App. 32. The state court denied his petition, and the Supreme Court of South Dakota affirmed on February 9, 2000, *Rhines* v. *Weber,* 2000 SD 19, 608 N. W. 2d 303. Rhines filed his *pro se* petition for federal habeas corpus pursuant to 28 U. S. C. § 2254 in the United States District Court for the District of South Dakota on February 22, 2000. App. 3. Because the 1-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was tolled while Rhines' state habeas corpus petition was pending, see 28 U. S. C. § 2244(d)(2), he still had more than 11 months left before the expiration of the limitations period.

With the assistance of court-appointed counsel, Rhines filed an amended petition for writ of habeas corpus and statement of exhaustion on November 20, 2000, asserting 35 claims of constitutional defects in his conviction and sentence. App. 39–60. The State challenged 12 of those claims as unexhausted. *Id.,* at 72–79. On July 3, 2002, approximately 18 months after Rhines had filed his amended federal habeas corpus petition, the District Court held that 8 of the 35 claims had not been exhausted. At this time, the AEDPA 1-year statute of limitations had run. See *Duncan* v. *Walker,* 533 U. S. 167, 181–182 (2001) (holding that the statute of limitations is not tolled during the pendancy of a federal petition). As a result, if the District Court had dismissed Rhines' mixed petition at that point, he would

have been unable to refile in federal court after exhausting the unexhausted claims. Rhines therefore moved the District Court to hold his pending habeas petition in abeyance while he presented his unexhausted claims to the South Dakota courts. On July 3, 2002, the District Court granted the motion and issued a stay "conditioned upon petitioner commencing state court exhaustion proceedings within sixty days of this order and returning to this court within sixty days of completing such exhaustion." App. 136. In compliance with that order, Rhines filed his second state habeas corpus petition on August 22, 2002.

The State appealed the District Court's stay of Rhines' mixed petition to the United States Court of Appeals for the Eighth Circuit. Relying on its decision in *Akins* v. *Kenney*, 341 F. 3d 681, 686 (2003) (holding that "a district court has no authority to hold a habeas petition containing unexhausted claims in abeyance absent truly exceptional circumstances" (internal quotation marks omitted)), the Court of Appeals vacated the stay and remanded the case to the District Court to determine whether Rhines could proceed by deleting unexhausted claims from his petition. 346 F. 3d 799 (2003). We granted certiorari to resolve a split in the Circuits regarding the propriety of the District Court's "stay-and-abeyance" procedure. 542 U. S. 936 (2004). Compare, *e. g., Crews* v. *Horn*, 360 F. 3d 146, 152 (CA3 2004); and *Zarvela* v. *Artuz*, 254 F. 3d 374, 381 (CA2 2001), with 346 F. 3d 799 (2003) (case below).

II

Fourteen years before Congress enacted AEDPA, we held in *Rose* v. *Lundy*, 455 U. S. 509 (1982), that federal district courts may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims. We reasoned that the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims. *Id.,* at 518–519. We

noted that "[b]ecause 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,' federal courts apply the doctrine of comity." *Id.*, at 518 (quoting *Darr* v. *Burford*, 339 U. S. 200, 204 (1950)). That doctrine "'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.'" 455 U. S., at 518.

Accordingly, we imposed a requirement of "total exhaustion" and directed federal courts to effectuate that requirement by dismissing mixed petitions without prejudice and allowing petitioners to return to state court to present the unexhausted claims to that court in the first instance. *Id.*, at 522. When we decided *Lundy*, there was no statute of limitations on the filing of federal habeas corpus petitions. As a result, petitioners who returned to state court to exhaust their previously unexhausted claims could come back to federal court to present their perfected petitions with relative ease. See *Slack* v. *McDaniel*, 529 U. S. 473, 486 (2000) (dismissal without prejudice under *Lundy* "contemplated that the prisoner could return to federal court after the requisite exhaustion").

The enactment of AEDPA in 1996 dramatically altered the landscape for federal habeas corpus petitions. AEDPA preserved *Lundy*'s total exhaustion requirement, see 28 U. S. C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"), but it also imposed a 1-year statute of limitations on the filing of federal petitions, § 2244(d). Although the limitations period is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review," § 2244(d)(2), the filing of a petition for ha-

beas corpus in federal court does not toll the statute of limitations, *Duncan*, 533 U. S., at 181–182.

As a result of the interplay between AEDPA's 1-year statute of limitations and *Lundy*'s dismissal requirement, petitioners who come to federal court with "mixed" petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review. For example, if the District Court in this case had dismissed the petition because it contained unexhausted claims, AEDPA's 1-year statute of limitations would have barred Rhines from returning to federal court after exhausting the previously unexhausted claims in state court. Similarly, if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period runs are slim. The problem is not limited to petitioners who file close to the AEDPA deadline. Even a petitioner who files early will have no way of controlling when the district court will resolve the question of exhaustion. Thus, whether a petitioner ever receives federal review of his claims may turn on which district court happens to hear his case.

We recognize the gravity of this problem and the difficulty it has posed for petitioners and federal district courts alike. In an attempt to solve the problem, some district courts have adopted a version of the "stay-and-abeyance" procedure employed by the District Court below. Under this procedure, rather than dismiss the mixed petition pursuant to *Lundy*, a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner ex-

hausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court.

District courts do ordinarily have authority to issue stays, see *Landis* v. *North American Co.,* 299 U. S. 248, 254 (1936), where such a stay would be a proper exercise of discretion, see *Clinton* v. *Jones,* 520 U. S. 681, 706 (1997). AEDPA does not deprive district courts of that authority, cf. 28 U. S. C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus . . . shall not be *granted* unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State" (emphasis added)), but it does circumscribe their discretion. Any solution to this problem must therefore be compatible with AEDPA's purposes.

One of the statute's purposes is to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases." *Woodford* v. *Garceau,* 538 U. S. 202, 206 (2003). See also *Duncan,* 533 U. S., at 179. AEDPA's 1-year limitations period "quite plainly serves the well-recognized interest in the finality of state court judgments." *Ibid.* It "reduces the potential for delay on the road to finality by restricting the time that a prospective federal habeas petitioner has in which to seek federal habeas review." *Ibid.*

Moreover, Congress enacted AEDPA against the backdrop of *Lundy*'s total exhaustion requirement. The tolling provision in § 2244(d)(2) "balances the interests served by the exhaustion requirement and the limitation period" "by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued." *Duncan, supra,* at 179. AEDPA thus encourages petitioners to seek relief from state courts in the first instance by tolling the 1-year limitations period while a "properly filed application for State post-conviction or other collateral review" is pending. 28 U. S. C. § 2244(d)(2). This scheme reinforces the importance of *Lundy*'s "simple and clear instruction to potential litigants: before you bring any claims to federal court,

be sure that you first have taken each one to state court."
455 U. S., at 520.

Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. Cf. *Duncan, supra,* at 180 ("[D]iminution of statutory incentives to proceed first in state court would . . . increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").

For these reasons, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U. S. C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA. A mixed petition should not be stayed indefinitely. Though, generally, a prisoner's "principal interest . . . is in obtaining speedy federal relief on his claims," *Lundy, supra,* at 520 (plurality opinion), not all petitioners have an incentive to obtain federal relief as quickly as possible. In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their

incarceration and avoid execution of the sentence of death. Without time limits, petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review. Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back. See, e. g., *Zarvela*, 254 F. 3d, at 381 ("[District courts] should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed"). And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all. See *id.*, at 380–381.

On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. See *Lundy*, 455 U. S., at 522 (the total exhaustion requirement was not intended to "unreasonably impair the prisoner's right to relief"). In such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions. For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief. See *id.*, at 520 (plurality opinion) ("[A petitioner] can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims").

The Court of Appeals erred to the extent it concluded that stay and abeyance is always impermissible. We therefore vacate the judgment of the Court of Appeals and remand the case for that court to determine, consistent with this opinion, whether the District Court's grant of a stay in this case constituted an abuse of discretion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE GINSBURG and JUSTICE BREYER join, concurring.

While I join the Court's opinion, I do so on the understanding that its reference to "good cause" for failing to exhaust state remedies more promptly, *ante*, at 277, is not intended to impose the sort of strict and inflexible requirement that would "'trap the unwary *pro se* prisoner.'" *Rose* v. *Lundy*, 455 U. S. 509, 520 (1982); see also *Slack* v. *McDaniel*, 529 U. S. 473, 487 (2000).

JUSTICE SOUTER, with whom JUSTICE GINSBURG and JUSTICE BREYER join, concurring in part and concurring in the judgment.

I join the Court's opinion with one reservation, not doctrinal but practical. Instead of conditioning stay-and-abeyance on "good cause" for delay, *ante*, at 277, I would simply hold the order unavailable on a demonstration of "intentionally dilatory litigation tactics," *ante*, at 278. The trickiness of some exhaustion determinations promises to infect issues of good cause when a court finds a failure to exhaust; *pro se* petitioners (as most habeas petitioners are) do not come well trained to address such matters. I fear that threshold enquiries into good cause will give the district courts too much trouble to be worth the time; far better to wait for the alarm to sound when there is some indication that a petitioner is gaming the system.