EMILIO M. GARZA, Circuit Judge,
dissenting:
Unlike the majority, I conclude that, although Miller has not exhausted his state remedies, denial of relief on the merits under 28 U.S.C. § 2254(b)(2) is not appropriate because Miller has at least made a colorable federal claim for relief. I would remand to the district court with instructions either to dismiss the proceedings for failure to exhaust or to stay and abey them while Miller brings his Brady claim before a state habeas court. Accordingly, I respectfully dissent.
Miller did not present his Brady claim in his state habeas application because he did not receive the relevant evidence until after he had filed his federal habeas petition. Texas permits subsequent applications in death penalty eases in three distinct circumstances: 1) when the factual or legal basis for the new claims or issues was not available at the time of the original petition; 2) when the applicant can show by a preponderance of the evidence that no rational juror would have found the applicant guilty but for the violation of the constitution; or 3) when the applicant can show by clear and convincing evidence that no rational juror would have answered affirmatively any of the special issues submitted in capital cases. Tex.Crim. Proc. Code Ann. art. 11.071 § 5(a)(l)-(3); see Ex parte Graves 70 S.W.3d 103, 115 & n. 49 (Tex.Crim.App.2002) (stating that Texas has three exceptions to the general rule against successive habeas petitions and listing those described above).
The district court erroneously read the first two exceptions as two elements of a single exception and therefore incorrectly determined that Miller would have to demonstrate that he could meet either the first and second exceptions or the third. Because it concluded that he could not satisfy the second or third exception, the district court held that Miller had no state forum in which to bring his Brady claim and that he had therefore exhausted his state law remedies. This holding was in error because Miller would be able to bring a subsequent application in Texas court under the first exception.[1]
When a federal habeas petitioner brings an unexhausted claim, the court should either dismiss the proceedings for failure to exhaust or stay and abey them until a state habeas court has had the opportunity to hear the claim. Rhines v. Weber, 544 U.S. 269, 125 S.Ct. 1528, 1534, 161 L.Ed.2d 440 (2005). Under Rhines, stay and abeyance is appropriate when the district court finds that: 1) there was good cause for the failure to exhaust the claim; 2) the claim is not plainly meritless; and 3) there is no indication that the failure was for purposes of delay. Id. at 1535. The parties have not briefed the first and third elements, so the district court would need to make the appropriate findings on remand.[2]
*255 The second element, however, has been thoroughly briefed, and I conclude that Miller’s Brady claim is not plainly merit-less because the various pieces of evidence, taken together, could have raised a reasonable doubt in a juror as to either special interrogatory. See United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (holding that evidence is material under Brady if there is a reasonable probability that, had it been disclosed, the result of the proceeding would have been different); United States v. Sipe, 388 F.3d 471, 478 (5th Cir.2004) (holding that when there are multiple Brady violations, the court must analyze the cumulative effect of the suppressed evidence).
The first piece of evidence at issue is notes and transcripts from interviews with McCall. Effectively impeaching McCall was crucial to the defense given the weight the prosecution asked the jury to place on McCall’s testimony. As the majority points out, McCall was generally impeached on cross-examination as a dishonest criminal who was not always truthful with the police during the course of the investigation. Nevertheless, there is a significant qualitative difference between evidence that a witness is generally not truthful and specific evidence that he gave inconsistent statements with respect to the subject of his crucial testimony. I disagree with the majority’s position that specific impeachment material is only of incremental value in light of abundant general impeachment material. The defense was not able to cross-examine McCall about his statements in the May 20 interview in which he specifically denied that Woods and Segura had confessed the murders to him and made no mention of going to the crime scene with Miller. Those statements specifically contradicted his trial testimony. Had the jury been able to hear that in addition to being generally dishonest, McCall had made specific statements inconsistent with the heart of his trial testimony, it might have given his testimony less weight. McCall provided important corroboration of Segura’s account of the crime, which portrayed Miller as a leader in the killings, so weakening his testimony could have cast doubt on whether Miller planned the killings and was an actual shooter.
The second piece of allegedly suppressed evidence was police notes from interviews with Morris. Morris, who testified that he had given his .38 caliber handgun to Miller in the days before the murders, was not impeached with prior inconsistent statements at all. His testimony provided critical corroboration from someone uninvolved with the crime linking Miller to one of the murder weapons, which showed at sentencing that Miller had orchestrated the murders in advance. The majority notes that Reyes, Segura and McCall could corroborate Morris’s testimony. Reyes, however, could only corroborate Morris’s account of what happened after the murders, not before, so he could not bolster that part of Morris’s testimony that was most important at sentencing, i.e. that Miller procured a weapon days in advance of the murders. Moreover, Segura and McCall’s corroboration was of limited value because of their limit *256 ed credibility. Indeed, Morris’s testimony functioned at trial to provide credible, disinterested corroboration of their account of the crime. The majority’s reliance on Segura and McCall to bolster Morris’s account therefore begs the question.
The third group of evidence at issue consists of affidavits of four non-testifying witnesses. One affiant, Robert White, stated that Woods had confessed to the murders and implied that Miller was not a shooter. Another affiant stated that Woods might have said that a .45 caliber gun was used. That statement is significant because McCall testified that Segura kept a .45 in his car, which was used to transport the victims. The majority concludes that the affidavits are not material because they are unreliable in that they were based on conversations that occurred either late at night or early in the morning after the declarants and Woods had either smoked marijuana or drank alcohol. I am unconvinced that jurors would necessarily find unreliable a person’s recollection of statements heard while intoxicated. In addition, if they focused on Woods’s intoxication, rather than the affiants’, jurors might find the evidence quite reliable, as intoxication often makes one less reticent to speak the truth.
The majority correctly points out that the jury did not need to believe that Miller was the ringleader or a shooter to find that he acted deliberately and with the reasonable expectation that the victim would die, the question of the first interrogatory. On the other hand, a juror could believe that Miller was complicit in the robberies and also have a reasonable doubt that Miller expected Mozingo to die during their course. The strongest evidence of Miller’s expectation that Mozingo would die was: 1) that he procured the gun from Morris, showing that he had planned the murder; 2) McCall’s testimony portraying Miller as a ringleader in the crime; and 3) Segura’s account of the crime, which pointed to Miller as a shooter. The suppressed evidence casts doubt on each of these.
Undermining the portrayal of Miller as the ring leader and shooter could have also affected the jury’s finding that Miller posed a future danger of violent crime, the question of the second interrogatory. The majority concludes that the exculpatory evidence is not material to this inquiry given Miller’s criminal history. That history alone, however, does not necessarily suggest that Miller would go on to commit violent crime in the future. While Miller’s criminal history was becoming increasingly serious, it did not include episodes of actual violence. Testimony that Miller had a central role in planing and carrying out the murders, therefore, was by far the best evidence of his future dangerousness.[3] Because the suppressed evidence would have undermined the strongest indicators of Miller’s future dangerousness, it might have caused a juror to find reasonable doubt that Miller would commit violent crimes in the future.
Based on the above, I find the materiality question to be close. At the very least, Miller’s Brady claim is not plainly merit-less. For that reason, I would remand to the district court with instructions to determine if the first and third prongs of Rhines v. Weber are satisfied and to stay and abey the proceedings if they are.
The majority dismisses the petition on the merits rather than for failure to exhaust. See 28 U.S.C. § 2254(b)(2) (“An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the *257 State.”). Denial of relief under § 2254(b)(2), however, is “inappropriate” unless “it is perfectly clear that the applicant does not even raise a colorable federal claim.” Mercadel v. Cain, 179 F.3d 271, 276 n. 4 (5th Cir.1999) (quoting Granberry v. Greer, 481 U.S. 129, 135, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987) and collecting cases). As demonstrated above, Miller’s Brady claim is at least colorable, so dismissal under § 2254(b)(2) is inappropriate.
Under the AEDPA, our task is to review the state habeas court’s findings and conclusions, not to make those determinations ourselves. See 28 U.S.C. § 2254(d). In keeping with that scheme, I would follow Mercadel and allow the state court an opportunity to resolve the factual and legal issues in dispute. I would further instruct the district court to determine, under Rhines, whether to dismiss the proceedings or stay and abey them until the state court has had such an opportunity.

. Although many years have passed since Miller learned of the factual basis for his Brady . claim, it does not seem that he would be time barred from bringing it in a subsequent habe-as application. Article 11.071 has detailed scheduling deadlines for initial habeas applications, but it does not provide such guidelines for successive applications. See generally Tex.Crim. Proc.Code Ann. art. 11.071.

. I suspect that the cause for Miller's failure to exhaust was Texas’s two-forums rule, *255 which would prevent him from bringing his Brady claim in state court while his exhausted claims were pending in federal court. See Ex parte Powers, 487 S.W.2d 101 (Tex.Crim.App. 1972). Because Miller did not discover the suppressed evidence until after he had filed his petition in federal court in 1999, he would have had to forego federal habeas review of his exhausted claims if he chose to pursue his Brady claim in state court. Texas has since lifted its two-forum rule, which means that the state court could now hear Miller’s claim if we stayed the proceedings rather than dismiss them. See Ex parte Soffar, 143 S.W.3d 804, 807 (Tex.Crim.App.2004).

. Admittedly, the jury also heard evidence that Miller planned to kill Segura for testifying in this case, but that evidence came from McCall. The exculpatory evidence, as discussed above, would have allowed the defense to better impeach McCall.