O’SCANNLAIN, Circuit Judge,
dissenting in part:
I concur in most of the court’s lead opinion today. With respect, however, I must dissent from its reversal and remand of Gonzales’s claims pertaining to the alleged suppression of impeachment evidence. The test the lead opinion crafts directly conflicts with the Supreme Court’s recent holding that “evidence introduced in federal court has no bearing” on claims that have been adjudicated on the merits before a state court. Cullen v. Pinholster, — U.S. -, 131 S.Ct. 1388, 1400, 179 L.Ed.2d 557 (2011).
I
As the lead opinion and the concurrence thoroughly discuss, Jesse Gonzales stands convicted of the intentional murder of Los Angeles County Sheriffs Deputy Jack Williams. Gonzales has never denied that he killed his victim or that he intended to do so. Therefore, the only issue at his trial was whether he knew that Deputy Williams was a peace officer in the pursuit of his duties.
A primary issue throughout Gonzales’s quest for postconviction relief has been whether he had sufficient opportunity to impeach William Acker, a fellow inmate who testified that Gonzales confessed to wanting to “bag a cop.” See People v. Gonzalez, 51 Cal.3d 1179, 275 Cal.Rptr. 729, 800 P.2d 1159, 1166 (1990). As a result, the issue in this appeal is whether the California courts have already adjudicated this claim on the merits.
Acker told largely the same story regarding Gonzales’s confession at the guilt phase trial and at both penalty phase trials in the state court. See id., 275 Cal.Rptr. 729, 800 P.2d at 1166-68. With every recounting, defense counsel more aggressively and extensively attacked the story’s credibility. By the time the second penalty jury handed down its verdict, Acker had admitted that he testified in order to motivate authorities to transfer him to an out-of-state facility, that he was capable of lying to achieve his purposes, and that he had given information in more than half a dozen other cases, both before and after Gonzales’s trial. Id., 275 Cal.Rptr. 729, 800 P.2d at 1168.
Nonetheless, in state post-conviction proceedings, Gonzales argued that by failing to disclose a complete picture of Acker’s interactions with the police, prosecutors deprived him of a fair opportunity to cross-examine Acker in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963). He also argued that his attorney provided constitutionally deficient counsel under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) by failing to discover this impeachment evidence.
The California Supreme Court soundly rejected these arguments, noting that at all stages of the trial, “cross-examination ... [had] exposed evasiveness and inconsistencies in Acker’s claims about the exact nature of his relationship with the authorities.” Gonzalez, 275 CaLRptr. 729, 800 P.2d at 1193. It found that the “additional details [discovered by Gonzales during state proceedings did] not paint a signifi *1018 cantly different picture of Acker’s character and motives than appears on the record.” Id. And it held that “[e]ven if this information was overlooked by trial counsel or should have been proffered by the prosecution, its omission was harmless beyond a reasonable doubt and does not undermine confidence in the guilt or penalty verdicts.” Id.
In September 1996, Gonzalez petitioned for a federal writ of habeas corpus. Discovery in the federal proceeding revealed a total of six newly-obtained psychological reports, each of which drew a different conclusion about Acker’s mental health. Memorandum and Order Denying Petitioner’s Second Motion for Reconsideration, No 2:95-cv-02345-JVS, (C.D.Cal. 2008) (hereinafter “Second Reconsideration Order”). Acker’s first examination in August 1972 revealed “no evidence of psychosis.” Id. at 33. In 1973, doctors noted that Acker was “depressive” and that he had “an extremely poor image of himself.” Id. at 30 (internal quotation marks omitted). It was not until June 1974 that anyone suggested that Acker had schizophrenia. Id. at 31. A second opinion given only a month later found no “overt psychiatric condition.” Id. at 33. In 1975, a staff psychologist once again mentioned schizophrenia. Id. at 32. But in his most recent evaluation, Chief Psychiatrist R.L. Flanagan refused as unnecessary Acker’s requested psychiatric medication. Id. 28-30.
At most, these reports suggest that Acker has an antisocial personality and that he tries to manipulate the prison system to obtain transfers to his preferred place of detention. The district court concluded that while “the investigation ‘increased the quantity and the quality of possible impeachment matter against Acker,’” the withheld information was not material because Acker was already extensively impeached and was not the only evidence relating to the special circumstance. Second Reconsideration Order at 40 (quoting Order on Respondent’s (sic) [First] Motion for Reconsideration, No 2:95-cv-02345-JVS, (C.D.Cal.2003)). As such, the court denied him habeas relief. Id. at 52, 77.
II
Because Gonzalez filed his habeas petition after April 24, 1996, our authority to grant him relief is limited by the Antiterrorism and Effective Death Penalty Act (“AEDPA”). See Lindh v. Murphy, 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). As the Supreme Court has repeatedly reminded us, we may not grant relief in an AEDPA case just because we would have come to a different conclusion regarding a particular prisoner’s claim. See Harrington v. Richter, — U.S.-, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011). Instead “[a] state court’s determination that a claim lacks merit precludes federal habeas relief so long as ‘fairminded jurists could disagree’ on the correctness of the state court’s decision.” Id. (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).
Applying this standard, the lead opinion properly determines that the California Supreme Court’s finding of “no prejudice [from any failure to provide Brady information], based on the material known to it at the time of its decision, was not unreasonable.” Op. at 982 n. 10.
Rather than consigning this conclusion to a footnote, we should have made it the end of our review. Just last Term, the Court unequivocally held that “[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.” Pinholster, 131 S.Ct. at 1400. Because “evidence introduced in *1019 federal court has no bearing on § 2254(d)(1) review,” a state court’s decision on the merits simply may not be impugned on the basis of such evidence.[1]
Ill
Apparently displeased that we may not grant Gonzales habeas relief based upon information introduced in federal court, the lead opinion today patches together an end run around Pinholster’s holding from (1) a hypothetical problem cited in its dissent, (2) a hypothetical solution posed in a concurrence, (3) a footnote in the majority opinion responding to both, and (4) an incredibly broad definition of the word “claim.”[2]
Writing in dissent in Pinholster, Justice Sotomayor ruminated about the plight of a defendant who discovers additional evidence of prosecutorial misconduct after he exhausts all possible methods of relief. In her hypothetical, the defendant’s initial habeas petition brings an unsuccessful Brady claim. Id. at 1418. The defendant then discovers additional exculpatory statements that were suppressed by the prosecution, but “state law would not permit the petitioner to present the new evidence in a successive petition.” Id. (citing Virginia state law). In a footnote, the Court majority suggested that in such circumstances, the defendant “may well present a new claim.” Id. at 1401 n. 10; see also id. at 1412 (Breyer, J. concurring). It refused, however, to adopt Justice Sotomayor’s view. Id. at 1401 n. 10.
Ignoring the fact that unlike Justice Sotomayor’s hypothetical prisoner Gonzales could, and should, have sought to file a new state petition,[3] the court today snatches that suggestion and treats it as the law. Then, without analysis, the court concludes that rather than entering “new evidence [which] merely bolsters [his old] Brady claim,” id. at 1418, Gonzales has presented an entirely new claim. Op. at 979. Op. at 999 (Fletcher, W., concurring) (“I agree with Judge Clifton, that we may treat [evidence that was not before the state court] in the same way we treat unexhausted claims.”). The lead opinion places no limits on this conclusion other than that the state court could reasonably find in Gonzales’s favor.
*1020 I cannot ascribe to this view. Not only does it virtually ignore Pinholster, it is inconsistent with prior Supreme Court case law that has carefully distinguished between “the presentation of additional facts to the district court” and “the substance of [a petitioner’s] claim.” Vasquez v. Hillery, 474 U.S. 254, 258, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986). Until today, we have never treated new evidence to be an entirely new claim unless it “place[d] the case in a significantly different ... evidentiary posture.” Aiken v. Spalding, 841 F.2d 881, 888 (9th Cir.1988) (internal quotation marks omitted); see also id. at 884 (Poole, J., dissenting) (requiring that the new evidence “fundamentally alter[] the nature of [the] claim” for relief).
Furthermore, the lead opinion’s conclusion severely undermines “AEDPA’s goal of promoting ... finality,” Pinholster, 131 S.Ct. at 1401 (internal quotation marks omitted) and of “ ‘reducing] delays in the execution of state and federal criminal sentences, particularly in capital cases.’ ” Rhines v. Weber, 544 U.S. 269, 276, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005) (quoting Woodford v. Garceau, 538 U.S. 202, 206, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003)).
While the lead opinion appeals to comity and federalism as alternative purposes of AEDPA, its opinion does little, if anything to serve these important considerations. Its rule as to what constitutes a “new claim” arguably entitles state court prisoners to the opportunity to re-litigate any claim so long as they introduce some modicum of new evidence that, when aggregated with the existing evidence, would allow a reasonable state court to find in the petitioner’s favor. It is difficult to see how federalism and comity are served by requiring the state courts to reconsider so many “new claims” while a federal habeas court looms in the background.
IV
Gonzales’s Brady and Strickland claims are not new. As in the state court, he alleges that the prosecutors violated their Brady obligation by failing to disclose impeachment evidence pertaining to Acker. While the specific items about which he complains are different, the claim relates to the same duty by the same prosecutor as it pertained to the same witness. Nothing in the new evidence “place[s] the case in a significantly different evidentiary posture” when compared to the appropriate standard. Aiken, 841 F.2d at 883-84 (internal quotation marks omitted).
Because this is an AEDPA case, we may grant habeas relief only if “the state court confronts a set of facts materially indistinguishable from those at issue in a decision of the Supreme Court and, nevertheless, arrives at a result different from its precedent.” Lambert v. Blodgett, 393 F.3d 943, 974 (9th Cir.2004) (citing inter alia Lockyer v. Andrade, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144(2003)). The lead opinion cites no such case. The Supreme Court case on which its analysis depends, Banks v. Dretke, 540 U.S. 668, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004), is easily distinguishable from Gonzales’s situation. There, the prosecutor concealed that the witness at the heart of his case was a paid informant. Id. at 702, 124 S.Ct. 1256. As a result, the defense was able to impeach this witness using only two other witnesses who were themselves impeached and evidence of drug use that the prosecutor was able to turn to his advantage. Id. Under such circumstances, the Court concluded that the concealed evidence was not cumulative. Id.
By contrast, as the district court found here, Acker was “extensively impeached” based on his own admissions of his willingness and motivation to lie. Second Recon *1021 sideration Order at 63. And such secondary evidence of his propensity to lie was, in fact, cumulative. His testimony was also “less central than the petitioner [and now the lead opinion and the concurrence] would have [us] believe.” Id. As the lead opinion notes, to have the necessary special circumstance, Gonzales need only have known that Williams was a peace officer in the performance of his duties when he pulled the trigger. Op. at 996 & n. 16. The testimony of several police officers regarding the implausibility of Gonzales’s story also went to that point. As such, the state court could reasonably deny Gonzales relief without violating Banks, and Gonzales is not in a fundamentally different evidentiary position.[4]
That this newly discovered evidence does not present a new claim is even more apparent with Gonzales’s arguments based on Strickland. If Gonzales’s attorney did not violate professional standards by not discovering Acker’s other criminal convictions, which were matters of public record, see Gonzalez, 275 Cal.Rptr. 729, 800 P.2d at 1193 (declining to fault Gonzales’s attorney for failing to discover additional evidence to impeach Acker), he could not have committed such a violation by failing to discover the contents of Acker’s psychological reports, which were not similarly available. Second Reconsideration Order at 49-50 (discussing this Strickland claim).
V
Even if the lead opinion and the concurrence were correct and the psychological reports fundamentally altered the nature of Gonzales’s claims, it still errs by ordering the district court to retain jurisdiction while Gonzales exhausts these claims. In Rhines, the Court concluded that a district court may in its discretion stay and abate a federal habeas petition, but “only in limited circumstances.” 544 U.S. at 277, 125 S.Ct. 1528. The Court warned that “[s]tay and abeyance, if employed too frequently, has the potential to undermine the[ ] ... purposes” of AEDPA. Id. In particular, the Court instructed that the petition “should not be stayed indefinitely.... And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all.” Id. at 277-78,125 S.Ct. 1528.
Contrary to the lead opinion’s assertion, Gonzales has engaged in intentionally dilatory litigation tactics. He learned of the psychological reports in 2003. Second Reconsideration Order at 28. But, rather than requesting a stay so that he could present the supposedly new claims in the State courts, Gonzalez pressed ahead with not one, but two motions for reconsideration. As a result, the State has been arguing lack of exhaustion for the better part of a decade, id. at 41 (discussing the State’s opposition to the First Motion for Reconsideration), yet Gonzales never sought to stay the federal proceedings to go back to the state court.
For the forgoing reasons, while I join most of the court’s lead opinion, I respectfully dissent from its decision to remand Gonzales’s claims.

. Responding to Part III of the lead opinion, I respectfully must insist that it creates an unacceptably broad definition of what constitutes a new claim. Otherwise, it is unclear on what basis it may grant any relief. For if — as the lead opinion’s response seems to concede — Gonzales’s claim is not new, AEDPA’s "backward-looking language requires an examination of the state-court decision at the time it was made." Pinholster, 131 S.Ct. at 1400 (emphasis added). Developments in the record or in the law between the last state decision on the merits and our review on habeas are simply irrelevant. Id.; see also Greene v. Fisher,-U.S.-, 132 S.Ct. 38, 181 L.Ed.2d 336 (2011). As is whether we think that "focus [ing] on what a state court knew and did,” Pinholster, 131 S.Ct. at 1399, creates "an unjust and illogical result,” Op. at 999. Because that is precisely what Congress has said, Pinholster, 131 S.Ct. at 1399, it is precisely what “the law requires.” Op. at 999.

. California has a general “policy ... to deny a new application unless there has been a change in the facts or law,” but its Supreme Court has long held that "this policy is discretionary.” In re Bevill, 68 Cal.2d 854, 69 Cal.Rptr. 599, 442 P.2d 679, 684 n. 9 (1968).

. In an AEDPA case, our prior case law may serve only as persuasive authority, Mejia v. Garcia, 534 F.3d 1036, 1042 (9th Cir.2008). And similar considerations make the lead opinion’s analogy to cases such as Silva v. Brown unpersuasive. 416 F.3d 980, 984, 989 (9th Cir.2005) (concluding that impeachment evidence regarding a witnesses whose testimony “the district attorney ... agreed ... would be necessary to convict’’ the defendant was material).