In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3047

STEVEN D. LISLE, JR.,

*Petitioner-Appellant,*

*v.*

GUY PIERCE,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 13-4025 — **James E. Shadid**, *Chief Judge.*

ARGUED OCTOBER 28, 2015 — DECIDED AUGUST 11, 2016

Before WOOD, *Chief Judge*, and EASTERBROOK and
HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Petitioner Steven D. Lisle, Jr. was
convicted of first degree murder and aggravated battery with
a firearm and was sentenced to 37 years in prison. He seeks a
writ of habeas corpus because he contends that the state trial
court admitted as evidence testimonial statements made by
the surviving victim in violation of the Confrontation Clause
of the Sixth Amendment. The district court denied the writ,

and we affirm. The state courts did not apply Supreme Court precedent unreasonably in holding that the testimony in question, about a wounded man's statement to his aunt while waiting for an ambulance that Lisle had shot him, was not a "testimonial" out-of-court statement and thus was permitted under the Confrontation Clause.

I.   *Facts*

A.  *The Shootings and the Hearsay Testimony*

On September 15, 2003, in Rock Island, Illinois, LaRoy Owens was shot and killed and Ronald Hearn was wounded. Petitioner Lisle was convicted of first-degree murder and aggravated battery with a firearm.

Our focus is on trial testimony of Angela Lee, who is Hearn's aunt. She was asleep at home on the morning of September 15, 2003 when Hearn woke her up by yelling outside her back door. With five through-and-through bullet wounds, Hearn had somehow managed to walk to Lee's house a few blocks from the scene of the shootings. Lee called 911 and she and Hearn waited outside for help. While they waited, Lee asked Hearn some questions. The focus of Lisle's Confrontation Clause claim is the following testimony:

> A      I told him that he wasn't going to die. You know, he said numerous of [sic] times that he was going to die, and I told him that he wasn't. I told him he was a soldier. Soldiers didn't die. But deep down inside, I didn't think he was going to make it. Looking at him, I didn't think he was going to make it.

Q       Okay. You didn't think he was going to make it. Out there in the chair by the van, did you ask him anything?

A       Yes, I did.

Q       What did you ask him?

A       I asked him who did that to him.

Q       What did he say?

A       I said: Nell, who did this to you? And he said – And I asked him again. I said: Who did this to you? And he said: "Auntie," he said, "Roy shot, Auntie. Roy shot." And then I said: "Roy did this to you?" He said: "No, Auntie. Roy shot. Roy shot." And I said: "Nell, tell me who did this to you. Tell me." And he grabbed me— I kind—I kind of leaned down, and he says: "Steve." And he said: "And Korey was with him."

Hearn himself did not testify in Lisle's criminal trial. He was not shown to have been unavailable, but neither the prosecution nor defense called him. The jury found Lisle guilty of first-degree murder and aggravated battery.

B.  *State Appeals and Federal Court Proceedings*

In his direct appeal, Lisle argued that allowing Lee to testify about Hearn's out-of-court statement that "Steve" (Lisle) had shot him violated his Confrontation Clause rights. The state appellate court affirmed in an opinion issued October 5, 2007. The date is important because it is the date of the state courts' last decision on the merits of Lisle's federal claim. Under 28 U.S.C. § 2254(d)(1), the issue is whether the state court's

decision was an unreasonable application of Supreme Court precedent at that time. The Illinois Supreme Court denied Lisle's petition for leave to appeal.

After unsuccessful efforts to obtain post-conviction relief in the state courts, Lisle filed a federal habeas corpus petition in 2013. He raised several claims, but the claim that was properly before the federal court was his Confrontation Clause claim based on Lee's testimony about Hearn's out-of-court statement that Lisle had been the shooter. The district court denied relief, finding that the state appellate court's decision was not contrary to or an unreasonable application of Supreme Court precedent. The district court declined to issue a certificate of appealability. We granted a certificate on the Confrontation Clause claim, and we appointed counsel who have ably represented Lisle.

II. *Discussion*

We explain first that the state courts did not apply Supreme Court precedent unreasonably in rejecting Lisle's Confrontation Clause claim. We conclude by addressing a procedural issue regarding Lisle's exhaustion of state court remedies.

A. *The Confrontation Clause Claim*

Under the Antiterrorism and Effective Death Penalty Act, "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of

the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We review *de novo* the district court's legal conclusions. *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011).

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him." Fitting that right together with exceptions to the general prohibition on hearsay has long provided work for the nation's courts. Since 2004, that debate has been defined by the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004), and cases following it. Lisle contends that Hearn's answer to his aunt's question was "testimonial" hearsay under *Crawford* so that its admission violated his Confrontation Clause rights.

In *Crawford*, the issue was whether the Confrontation Clause was violated by admitting as evidence the recorded statement a wife gave to a police officer about her husband's participation in a fight. *Id*. at 38–41. The Court found a constitutional violation and drew a critical but undefined line between "testimonial" and "nontestimonial" hearsay. The Court explained:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however,

> the Sixth Amendment demands what the com-
> mon law required: unavailability and a prior
> opportunity for cross-examination.

541 U.S. at 68, citing *Ohio v. Roberts*, 448 U.S. 56 (1980). The Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *Id*. The Court said the term applies "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id*. The wife's recorded statement was part of a police interrogation, so it was testimonial and its admission violated the Confrontation Clause. See *id*. at 65–69.

In 2006, before the state courts rejected Lisle's claim, the Court addressed in more detail when a hearsay statement is "testimonial" in *Davis v. Washington*:

> Statements are nontestimonial when made in
> the course of police interrogation under circum-
> stances objectively indicating that the primary
> purpose of the interrogation is to enable police
> assistance to meet an ongoing emergency. They
> are testimonial when the circumstances objec-
> tively indicate that there is no such ongoing
> emergency, and that the primary purpose of the
> interrogation is to establish or prove past events
> potentially relevant to later criminal prosecu-
> tion.

547 U.S. 813, 822 (2006). The *Davis* opinion actually decided two cases, *Davis* itself and *Hammon v. Indiana*, No. 05-5705, and the different outcomes in the two cases helped sharpen the difference between testimonial and non-testimonial hearsay. In *Davis* itself, the victim of domestic violence acts called

911 and said that a former boyfriend was "jumpin' on me again." *Id*. at 817. During the call, the woman said that her attacker had just run out the door. Davis was charged with a felony violation of a domestic no-contact order. At trial, the woman did not testify. Over Davis's objection based on the Confrontation Clause, the recording of the woman's 911 call was played for the jury.

In *Hammon v. Indiana*, No. 05-5705, police arrived at a home to respond to a "reported domestic disturbance." *Davis*, 547 U.S. at 819 (quotation marks omitted). When the police asked the woman sitting outside what was going on, she originally said that "nothing was the matter." After an officer talked with her further, she explained that she had been in a physical altercation with her husband, Hammon. The State charged Hammon with domestic battery and with violating his probation. The State subpoenaed the woman, but she did not appear for the bench trial. Instead the officer who had questioned the woman testified about what she told him and authenticated her affidavit. Hammon objected on Confrontation Clause grounds. The trial court admitted the affidavit as a "present sense impression" and the woman's statements as "excited utterances" that "are expressly permitted in these kinds of cases even if the declarant is not available to testify." Hammon was found guilty on both charges. *Id*. at 821.

The Supreme Court affirmed Davis's conviction but reversed Hammon's. The Court explained that the statements to police in *Davis* were nontestimonial because they were made as the events were happening, rather than describing past events. 547 U.S. at 827. By contrast, the statements to police in *Hammon* were more similar to the statements in *Crawford*,

made "hours after the events" described, rendering them testimonial. *Id*. at 827, 829. The Court said that the interrogation in *Hammon* was part of the investigation into possible criminal past conduct and there was no emergency in progress. *Id*. at 829. The responding officer was seeking to determine "what happened," not "what is happening." *Id*. at 830.

*Crawford*, *Davis*, and *Hammon* all involved statements made to law enforcement. At the time of the last state court decision in this case in 2007, and even up until now, the Supreme Court has not yet applied *Crawford* to statements made to people who are not law enforcement officers. The Court also has declined to adopt a "categorical rule excluding … from the Sixth Amendment's reach" statements made to individuals who are not law enforcement officers, see *Ohio v. Clark*, 576 U.S. —,—,135 S. Ct. 2173, 2180—81 (2015), citing *Davis*, 547 U.S. at 823 n.2, so that question remains open in Supreme Court jurisprudence.

Our inquiry under 28 U.S.C. § 2254(d)(1) is whether the state court's rejection of Lisle's Confrontation Clause claim was an "unreasonable application" of controlling Supreme Court precedent in 2007, meaning that it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." See *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Lisle cannot satisfy this demanding standard.

Apart from the problem that the Supreme Court had not held in 2007 that a statement to someone other than a law enforcement officer can be testimonial under *Crawford*, the statement falls at best in between the two statements in *Davis* and *Hammond*. Under those circumstances, we cannot say that the

state court's decision was an unreasonable application of those precedents.

The state appellate court found that Hearn's out-of-court accusation was non-testimonial under *Crawford*. The state court reasoned that Hearn, like the victim in *Davis*, "was also in dire need of medical attention. Had Hearn made the exact same statement to a 911 operator, *Davis* would mandate that we find the statement non-testimonial in nature." 877 N.E.2d 119, 131–32 (Ill. App. 2007). The state court also applied the "objective circumstances" test that the Illinois Supreme Court had adopted in *People v. Stechly*, 870 N.E.2d 333 (Ill. 2007).

In *Stechly*, the Illinois Supreme Court said that "the Court clearly stated that the proper inquiry is what 'the circumstances objectively indicate' the purpose of the interrogation to be." 870 N.E.2d at 361, quoting *Davis*, 547 U.S. at 822. The court continued:

> There is no reason to believe that the applicability of the confrontation clause would depend on objective manifestations of intent when the statement is the product of police interrogation, but would depend on actual *subjective* intent outside of this context. Accordingly, in our view, the proper question is not whether the declarant actually did intend or foresee that his statement would be used in prosecution. Rather, the question is whether the objective circumstances indicate that a reasonable person in the declarant's position would have anticipated that his statement likely would be used in prosecution.

870 N.E.2d at 361.

Following this test, the appellate court said in Lisle's case:

> a reasonable person shot five times who has just made his way to his aunt's house and who has not received protection from his assailant or medical attention would not have anticipated that the statement to his aunt would be used in prosecution. He would, undoubtedly, have anticipated that identifying his assailant to his aunt would allow his aunt to take precautionary measures should the assailant also arrive at her residence. Therefore, Hearn's statement to Lee was nontestimonial in nature.

877 N.E.2d at 132.

Lisle argues that Lee's questions to the wounded Hearn were like the police questions to the battered wife in *Hammon*: questions seeking information about past events for use in a future prosecution. No reasonable speaker or questioner, he says, could think that knowing the identity of the shooter would help medical personnel in treating Hearn. In Lisle's view, no objective evidence indicated that Hearn's statement to Lee was for the purpose of resolving an emergency. Instead, Lee wanted the information only to bring justice in the event Hearn did not survive the shooting.

There is room for fair argument on these points, but Lisle has not shown that the state court decision was an unreasonable application of Supreme Court precedent, in 2007 or even today. In light of *Davis* and factual differences between this case and *Hammon*, it was not unreasonable for the state court to find that Hearn's statement to Lee was part of an effort to

deal with an ongoing emergency and thus was nontestimonial. Hearn arrived at Lee's home about 4:00 a.m. She had no idea what provoked the shooting or whether the person who shot Hearn was looking for him to ensure that he was mortally wounded. Recall that Hearn referred to Roy, Steve, and Korey by only their first names, implying that Lee knew them. With the information on who had done the shooting, Lee could flee immediately if she saw them coming. The state courts could reasonably treat the emergency as continuing. Emergency responders had not yet arrived.

The fact that Lee had called emergency personnel before she began asking Hearn questions does not change the result. The state courts could reasonably think that Lee or a reasonable person in her situation would have been concerned about the shooter following Hearn and arriving at her house before emergency responders arrived. Hearn's statement to his aunt is similar to the 911 call in *Davis*. The woman in *Davis* was describing events as they were still happening. So was Hearn, reporting events from a few minutes earlier, so recent that they could reasonably be considered ongoing.

Federal habeas law does not require state courts to predict what the Supreme Court will do in future cases, but we must note that the state courts here correctly anticipated the Supreme Court's holding in *Michigan v. Bryant*, 562 U.S. 344 (2011). In *Bryant*, the Court held that a statement to police officers in a "nondomestic dispute, involving a victim found in a public location, suffering from a fatal gunshot wound, and a perpetrator whose location was unknown at the time the police located the victim" was not testimonial. *Id*. at 359, 377–78. The Court adopted an objective test: "To determine whether the 'primary purpose' of an interrogation is 'to enable police

assistance to meet an ongoing emergency,' *Davis*, 547 U.S. at 822, which would render the resulting statements nontestimonial, we *objectively* evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." 562 U.S. at 359 (emphasis added).

*Bryant* explained that the "existence of an ongoing emergency is relevant to determining the primary purpose of the interrogation because an emergency focuses the participants on something other than 'proving past events potentially relevant to later criminal prosecution.'" *Id*. at 361, quoting *Davis*, 547 U.S. at 822 (brackets and footnote omitted). Whether "an emergency exists and is ongoing is a highly context-dependent inquiry." *Id*. at 363. The Court said that "the statements and actions of both the declarant and interrogators provide objective evidence of the primary purpose of the interrogation." *Id*. at 367. Therefore,

> when a court must determine whether the Confrontation Clause bars the admission of a statement at trial, it should determine the 'primary purpose of the interrogation' by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs. The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial because statements made to assist police in addressing an on-

going emergency presumably lack the testimo-
nial purpose that would subject them to the re-
quirement of confrontation.

*Id*. at 370 (footnote omitted).

Because the state court's rejection of Lisle's Confrontation
Clause claim was not contrary to or an unreasonable applica-
tion of Supreme Court precedent in 2007, the district court
correctly denied federal habeas relief. See 28 U.S.C. §
2254(d)(1). Hearn made his statement to someone other than
a law-enforcement officer, while he was still waiting for an
ambulance, bleeding from five through-and-through shots,
just eighteen minutes after the shootings. Under an objective
circumstances inquiry, it does not matter whether Lee or
Hearn thought he was going to survive. The admitted hearsay
was non-testimonial and its admission did not violate the
Confrontation Clause.

B. *Exhaustion of State Remedies*

Before concluding, we must address a procedural issue. A
federal habeas corpus petitioner is required to exhaust his
available state remedies before seeking federal relief. 28
U.S.C. § 2254(b)(1)(A). Federal courts must often wrestle with
problems posed by so-called "mixed" petitions, which com-
bine exhausted and unexhausted claims. See, e.g., *Rhines v.
Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982)
(imposing "total exhaustion" requirement).

At the time of oral argument in this appeal, Lisle still had
two post-conviction matters pending in state courts, though
neither involved his Confrontation Clause claim. We re-
quested supplemental briefing on whether Lisle had ex-

hausted all available state court remedies concerning his federal habeas petition, which included claims other than the Confrontation Clause claim in the district court. Both sides agreed that Lisle's pending state petitions do not render his federal habeas petition a mixed petition that would preclude our review. We explain briefly our agreement.

When Lisle filed his federal habeas petition in 2013, he had exhausted state remedies on his Confrontation Clause claim, having raised it in his direct appeal and his petition for leave to appeal to the state supreme court. However, the presence of even one unexhausted claim in a federal petition can prevent a federal court from reviewing the petition, even as to exhausted claims. See *Rhines*, 544 U.S. at 275; *Rose*, 455 U.S. at 522. When Lisle filed his federal habeas petition, he had two collateral review proceedings still pending in state courts, which raised the prospect that his federal petition might have combined exhausted and unexhausted claims.

The two pending proceedings are a motion for leave to file a successive post-conviction petition, and an appeal from the denial of a motion for relief from judgment. The parties' supplemental briefs have provided the details on those pending matters, and we agree that they do not overlap with any of the claims in Lisle's federal petition. The successive petition he is seeking leave to file does not present any federal claim that overlaps with his 2013 federal habeas petition. The other pending state court matter was a petition for relief from judgment pursuant to 735 ILCS 5/2-1401. The petition raised three claims that also do not overlap at all with the federal claims in Lisle's federal petition. Accordingly, our concerns about a possible mixed petition have been resolved. The Confronta-

tion Clause question for which we granted a certificate of appealability was properly before the district court and is properly before us.

The judgment of the district court denying Lisle's petition for a writ of habeas corpus is AFFIRMED.