RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0128p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

JERONIQUE D. CUNNINGHAM,
                         *Petitioner-Appellant*,

    *v.*

STUART HUDSON, Warden,
                         *Respondent-Appellee.*

No. 11-3005

_____

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:06-cv-00167—Patricia A. Gaughan, District Judge.

Argued: June 19, 2013

Decided and Filed: June 24, 2014

Before: MERRITT, MOORE, and WHITE, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Michael J. Benza, Chagrin Falls, Ohio, for Appellant. Ashon McKenzie, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee. **ON BRIEF:** Michael J. Benza, Chagrin Falls, Ohio, Alan Freedman, MIDWEST CENTER FOR JUSTICE, Evanston, Illinois, for Appellant. Ashon McKenzie, Thomas E. Madden, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

PER CURIAM. An Ohio jury convicted Jeronique Cunningham of two murders and sentenced him to death. After unsuccessfully pursuing post-conviction relief in the Ohio state courts, Cunningham filed a petition for a writ of habeas corpus in the federal district court. The district court denied his petition. He appeals based on seven claims

of error, two concerning ineffective assistance of counsel, and others concerning juror bias, jury voir dire error, jury instructions, a *Brady* violation, and prosecutorial misconduct. This opinion addresses only his claim of juror bias based on evidence that at the time of the trial the jury foreperson had a relationship with the families of the murder victims and that this relationship impacted her impartiality. We conclude that this claim of juror bias is not exhausted and is not procedurally defaulted because Cunningham may still raise this claim in a motion for a new trial or a second petition for post-conviction relief in the Ohio state courts. Because Cunningham presents this court with a mixed habeas petition containing exhausted and unexhausted claims, and because this claim of juror bias is "not plainly meritless," *Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009) (quotation marks omitted), we vacate the district court's judgment and remand the petition to the district court to determine whether it is appropriate to stay-and-abey the petition while Cunningham returns to state court to exhaust this claim.

## I. BACKGROUND

On January 3, 2002, after Cunningham bought crack cocaine from Shane Liles, Cunningham and his half-brother, Cleveland Jackson, decided to rob Liles at his home in Lima, Ohio. When the pair arrived at Liles's house, Jackson engaged Liles in conversation while Cunningham sat and watched a movie with two teenagers who were visiting the house. Cunningham then produced a gun and ordered the two teenagers into the kitchen, where a group of adults and children were already gathered. Two adults ran into the kitchen after Cunningham. Cunningham held the group at gunpoint while Jackson produced a second gun and forced Liles upstairs, where he robbed him of drugs and money. Jackson returned downstairs to the kitchen with Liles. The group was ordered to place their money, jewelry, and watches on the table. Jackson demanded more money from Liles, and shot Liles in the back when he responded that he had none. Jackson and Cunningham then turned their weapons on the other occupants, shooting each of them at least once. Though Liles and five others survived, Jala Grant, a three-year-old girl, and Leneshia Williams, a seventeen-year-old girl, died of their wounds.

The police recovered only five bullets and did not recover either of the guns. There was no evidence that any of the bullets came from the gun that Cunningham brandished.

The prosecution pursued an accomplice-liability theory against Cunningham at trial. The jury found Cunningham guilty of two counts of aggravated murder and two death-penalty specifications: committing a murder during an aggravated robbery and engaging in a course of conduct involving the purposeful killing of multiple people. *See* Ohio Rev. Code § 2929.04(A)(5), (7). The jury recommended the death penalty, and the sentence was duly entered.[1] The Ohio Supreme Court ruled against Cunningham on his direct appeal of right. *See State v. Cunningham*, 824 N.E.2d 504 (Ohio 2004).

Cunningham then filed for postconviction relief in the Ohio Court of Common Pleas. One of his claims was juror bias; he argued that juror Nichole Mikesell ("Mikesell") obtained negative information about him from colleagues at the social-service agency where she worked at the time of the trial. J.A. 712–14 (State Post-Conviction Petition). In support of this claim, he attached a report compiled by an investigator for Cleveland Jackson; the report summarized the investigator's interviews with the jurors after the trial. J.A. 938 (State Post-Conviction Petition, Ex. R). The Court of Common Pleas rejected Cunningham's request for discovery and rejected his petition for post-conviction relief, and the Ohio Court of Appeals affirmed. *State v. Cunningham*, No. 1-04-19, 2004 WL 2496525 (Ohio Ct. App. Nov. 8, 2004). The Ohio Supreme Court denied discretionary review. *State v. Cunningham*, 824 N.E.2d 92 (Ohio 2005).

In October 2006, Cunningham filed a petition for a writ of habeas corpus, alleging fourteen claims of error. R. 19 (Habeas Petition) (Page ID #142). Cunningham requested discovery on his juror-misconduct claim. R. 79 (Mot. to Compel Discovery at 1–15) (Page ID #1500–14). The district court granted Cunningham leave to depose Mikesell, the other seated and alternate jurors, Mikesell's co-workers, and Jackson's

---

[1]Jackson, who was tried after Cunningham, was also convicted and sentenced to death. This court upheld his conviction and sentence against collateral attack in *Jackson v. Houk*, 687 F.3d 723 (6th Cir. 2012).

investigator.  R. 86 (Discovery Op. at 12) (Page ID #1863).  Cunningham acquired affidavits from two jurors, Staci Freeman and Roberta Wobler.  Although neither Wobler nor Freeman mentioned anything about Mikesell having information about Cunningham from colleagues at her agency, both averred that Mikesell mentioned knowing the families of the victims of the crime.  According to Freeman's affidavit:

> At one point during the jury deliberations, I had problems with the apparent fact that all the ballistic evidence pointed to a 9mm automatic pistol and not the revolver.  I expressed my opinion and Nichole Mikesell responded that, You don't understand.  I know the families of the people that were shot in the kitchen. *The families know me* and I am going to have to go back and see them. *Those families are my clients.*  I interpreted Mikesell's comments as pressure to vote guilty.

R. 104-1 (Freeman Aff. at 1–2) (Page ID #1955–56) (emphasis added).  According to Wobler's affidavit, Mikesell "stated that she knew [of] the families of the victims [from Family Services] One young woman on the jury was adamant that Jeronique was not guilty.  Mikesell told the young woman and the jury that the young woman did not have to work in the local community."[2]  R. 103-1 (Wobler Aff. at 1–2) (Page ID #1952–53).  Counsel for Cunningham deposed Mikesell, who testified that she did not speak to social workers about Cunningham at the time of the trial, but that she did look at his file after the trial concluded.  R. 107 (Mikesell Dep. at 13) (Page ID #1970).  During the deposition, counsel asked Mikesell if, prior to trial, she knew any of the victims. *Id.* at 17 (Page ID #1971).  Counsel for the Warden objected that the question was beyond the scope of the claim, and the federal magistrate judge presiding over the deposition sustained the objection. *Id.* at 20 (Page ID #1972).

Cunningham moved for leave to amend his juror-bias claim to add the allegations that Mikesell was not impartial because she knew the families of the victims, considered them to be her clients, and would ultimately have to face them in the community.  R. 111-1 (Revised Claim 1 at 1-3) (Page ID #2046–48).  The district court granted leave to amend.  R. 120 (Order on Mot. to Am.) (Page ID #2317).  The district court denied

---

[2]Wobler's affidavit was typed and had hand-written additions, all of which were initialed "RTW."  The hand-written notations are included in this quotation in brackets.

Cunningham's request for an evidentiary hearing but authorized him to depose jurors Freeman and Wobler on this question. *Id.* at 5–6 (Page ID #2321–22). In her deposition, Freeman testified that, during guilt-phase deliberations, Mikesell "stat[ed] that she dealt with the victims and their families, they knew who she was, and that if she would find him not guilty that she would have to deal with them and that's just something she didn't want to have to deal with because they knew who she was." R. 137-1 (Freeman Dep. at 6) (Page ID #2455). When asked how this comment impacted her deliberations, Freeman testified that she felt pressured, she was the last one holding out, and "that comment should never have been made." *Id.* at 11 (Page ID #2460). Wobler testified in her deposition that Mikesell had said during deliberations that "she may *in the future* be working with the families under the Welfare Job and Family Services where she worked . . . not that she had been." R. 136-1 (Wobler Dep. at 5–6) (Page ID #2435–36) (emphasis added).

The Warden moved to strike the Freeman and Wobler depositions on the ground that Cunningham did not diligently seek information about the victims' families in state court. R. 142 (Mot. to Strike) (Page ID #2504). The district court, contrary to its earlier order, found that Cunningham attempted to develop the factual basis of his juror-misconduct claim in state court but was prevented from doing so by the state court's refusal to permit any discovery or an evidentiary hearing in postconviction. R. 155 (Order Den. Mot. to Strike at 3) (Page ID #2590). The district court found "that Petitioner exercised due diligence in the State court in attempting to develop the facts." *Id.*

Some months later, the case was reassigned to a new district judge, who denied Cunningham's petition for habeas corpus on all claims. As to the juror-bias claim based on Mikesell's relationship to the families of the victims, the district court held that the claim was unexhausted and procedurally defaulted, and that "[i]f the Court were to consider the testimony, it would find this claim to be without merit." *See Cunningham v. Hudson*, No. 3:06CV0167, 2010 WL 5092705, at *17–20 (N.D. Ohio Dec. 7, 2010). The district court concluded that the deposition testimony of jurors Wobler and Freeman

demonstrated that "they were not forced to convict Cunningham. Even though Freeman stated that she felt pressured, it was because she was the only one holding out, and she was not happy that Mikesell, as jury foreperson, was controlling the situation. Usually, a foreperson controls the jury." *Id.* The district court did not make any findings as to whether Mikesell knew the families of the victims.

We granted a certificate of appealability on seven claims, including whether the presence of the jury foreperson deprived Cunningham of a fair trial.

## II. ANALYSIS

### A. Standard of Review

We review "the district court's grant or denial of a habeas petition de novo." *Cleveland v. Bradshaw*, 693 F.3d 626, 631 (6th Cir. 2012). Because Cunningham's petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA), its standard of review applies. If a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, –U.S.–, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, –U.S.–, 131 S. Ct. 770, 786–87 (2011).

**B. Exhaustion**

We agree with the district court that Cunningham has not exhausted his claim of juror bias based on Mikesell's alleged relationship to the families of the victims. Although Cunningham presented a juror-bias claim to the state court, the factual basis was Mikesell's knowledge of Cunningham from her colleagues, not her alleged relationship with the families of the victims. Exhaustion under 28 U.S.C. § 2254(b) requires presentation of the same factual basis to the federal habeas court that was presented to the state court. *Hanna v. Ishee*, 694 F.3d 596, 609 (6th Cir. 2012). Therefore, Cunningham's claim based on Mikesell's relationship to the families of the victims may yet be exhausted "if the state still provides a remedy for the habeas petitioner to pursue, thus providing the state courts an opportunity to correct a constitutionally infirm state court conviction." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). However, if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant," an unexhausted claim may proceed in habeas. 28 U.S.C. § 2254(b)(1)(B)(i), (ii). We conclude that the claim is not yet exhausted because Cunningham may file a motion for a new trial or a second post-conviction petition.

Under Ohio Rule of Criminal Procedure 33, a new trial based on juror misconduct that materially affects the defendant's substantial rights may be granted on motion of the defendant. Ohio R. Crim. P. 33(A)(2). Generally, a motion for a new trial must be filed within fourteen days of the verdict or court decision, if jury trial was waived. Ohio R. Crim. P. 33(B). However, if "it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial . . . the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented" from timely filing the motion. *Id.* Thus, if Cunningham can show that he was "unavoidably prevented" from filing a motion for a new trial based on Mikesell's alleged relationship with the families of the victims within fourteen days of the verdict, he may still file a motion for a new trial on

this basis.**³** "[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *State v. Walden*, 483 N.E.2d 859, 865 (Ohio Ct. App. 1984). "Misconduct of the jury . . . [is] particularly susceptible to nondiscovery within fourteen days after the verdict where the misconduct did not consist of affirmative acts at trial, but, instead, involve[d] matters not occurring in open court and generally not known to either the court or counsel at the time of the occurrence." *Id.*

The only Ohio Supreme Court case addressing whether a criminal defendant demonstrated by clear and convincing proof that he was unavoidably prevented from timely filing a motion for a new trial based on jury misconduct is *State v. Schiebel*, 564 N.E.2d 54, 60 (Ohio 1990). *Schiebel* involved a pair of co-defendants, Warner and Schiebel, both of whom filed motions for a new trial based on juror misconduct more than fourteen days after the verdict was rendered. Immediately after the verdict, Warner's counsel interviewed the jurors; counsel did not directly ask each juror about other jurors' impressions of the case, and no juror volunteered information about misconduct. A few weeks later, however, a juror signed an affidavit indicating that another juror had stated that his mother-in-law had a deposit at the financial agency that Warner was charged with defrauding and that the juror said that he "hated" Warner. Based on this affidavit, both Warner and Schiebel moved for new trials; Warner filed his motion forty-nine days after the verdict was rendered and Schiebel moved fifty-two days after the verdict. Applying a deferential standard of review, the Ohio Supreme Court concluded that the trial court did not err in concluding that Warner and Schiebel had not shown by clear and convincing proof that they were unavoidably prevented from discovering this information within the time to file a motion for a new trial. *Id.* at 74–75.

---

**³**Ohio Rule of Criminal Procedure 33 also provides a more flexible time limit for filing a motion for a new trial "[w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial." Ohio R. Crim. P. 33(A)(6), (B). However, Cunningham cannot take advantage of this provision because "'newly discovered evidence' as used in that rule, does not refer to evidence of juror misconduct." *State v. Schiebel*, 564 N.E.2d 54, 62 (Ohio 1990).

The Court held that Warner did not satisfy the standard because although his attorneys interviewed the jurors, they did not specifically ask about "other jurors' conduct or their deliberations," and a juror "stated that he was prepared to mention [the concerning statements] to Warner's attorneys, but did not because he was not questioned on the matter," indicating that had the attorneys asked the right questions, they would have discovered the information. *Id.* at 75. Schiebel did not meet the standard because his attorneys did not even attempt to interview the jurors and his motion for a new trial was "based purely on the efforts of Warner's attorneys, not his own." *Id.*

Like Schiebel, Cunningham's counsel did not interview the jurors immediately after the verdict was rendered. However, there is no evidence in the record that indicates whether, had jurors Wobler and Freeman been interviewed within fourteen days of the verdict, they would have revealed the information about Mikesell's alleged relationship with the victims' families that they shared many years later. Accordingly, we cannot determine whether Cunningham can satisfy the requirement to file a late motion for a new trial. Given the inability to predict how the Ohio state courts would rule on such a motion, and because the determination of whether a habeas petitioner satisfies a state procedural requirement "is for the state court to make," *Wagner*, 581 F.3d at 419, we conclude that the state remedy of a motion for a new trial may still be available.

We also conclude that the remedy of a second post-conviction petition may still be available. The statute on second, successive, or untimely post-conviction petitions in Ohio allows such a petition only if both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was

convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

Ohio Rev. Code § 2953.23(A)(1) (emphasis added).

It is not clear from the evidence in the record whether Cunningham can show that he "was unavoidably prevented from discovery of the facts upon which [he] must rely." The Ohio courts offer very limited guidance on the availability of this remedy, particularly in the area of juror misconduct or bias. We have identified only two cases addressing whether a juror-misconduct claim satisfied the statutory requirements of § 2953.23(A), and these cases provide divergent approaches to the second statutory requirement. In *State v. Johnson*, an Ohio court of appeals denied a claim in a second post-conviction petition where the petitioner alleged that a juror turned off his hearing aid during the trial and stated to the foreperson that "'he didn't need it since he read about the case in the newspapers.'" No. 19426, 2003 WL 1423498, at *2 (Ohio Ct. App. Mar. 21, 2003) (unpublished). The court stated that "*[n]o* structural error concerning the mechanics by which the jury was constituted, and by which the jury considered the evidence, can satisfy this requirement, since the requirement is not couched in terms of the actual factfinder at trial, but in terms of a hypothetical 'reasonable factfinder.'" *Id.* (emphasis added). But in *State v. Poling*, the petitioner alleged that a juror who knew the defendant prior to the trial made negative statements about the defendant to other jurors; the court did not conclude, as in *State v. Johnson*, that no juror-misconduct claim could satisfy the second requirement, but rather rejected the claim because the petitioner did "not present any evidence that jurors were convinced of his guilt by the alleged statements or that they changed their verdict because of the statements." *State v. Poling*, No. 2012-A-0002, 2012 WL 2522974, at *4 (Ohio Ct. App. June 29, 2012) (unpublished). Because these are unpublished decisions of two intermediate appellate courts, we have no clear governing state law. Given this limited guidance on the statutory eligibility to raise a juror-bias claim in a second post-conviction petition under § 2953.23(A), we conclude that it is for the Ohio courts, not this court, to determine

whether Cunningham may bring this petition. *See Wagner*, 581 F.3d at 419 (the determination of whether petitioner can satisfy a state procedural rule "is for the state court to make"); *Godbolt v. Russell*, 82 F. App'x 447, 450 (6th Cir. 2003) (holding that even though it was unlikely that petitioner met the requirements for a second post-conviction petition in Ohio, "it is for the state courts to interpret and enforce their laws on such issues").

Cunningham's argument that a second post-conviction petition unquestionably would be futile is without merit. First, he states that he already presented his juror-bias claim in the state courts and there is no reason to believe that a second post-conviction petition would fare any differently. This argument is factually incorrect; as discussed earlier, Cunningham has not presented this factual basis to the Ohio courts. Second, Cunningham states that the remedy would be futile because he will not be able to obtain discovery in Ohio post-conviction proceedings. Although the Ohio courts have clearly stated that "there is no requirement of civil discovery in postconviction proceedings," *State ex rel. Love v. Cuyahoga Cnty. Prosecutor's Office*, 718 N.E.2d 426, 427–28 (Ohio 1999), and routinely deny post-conviction petitions without permitting discovery, *State v. Keith*, 891 N.E.2d 1191, 1198 (Ohio Ct. App. 2008), it is not clear that a petitioner who meets the statutory requirements would be prohibited from conducting discovery. Moreover, Cunningham does not provide any support from this or other courts for the proposition that the likelihood that one cannot obtain discovery renders a state remedy unavailable. Third, Cunningham argues that the statute requires a petitioner to prove actual innocence, which cannot be accomplished through a juror-bias claim. This misreads the statute; there is a different Ohio second post-conviction petition statute addressing claims of actual innocence involving new DNA evidence, *see* Ohio Rev. Code § 2953.23(A)(1)(A), but the section of the second post-conviction petition statute applicable to Cunningham does not require a showing of actual innocence. Thus, Cunningham may still be able to pursue a second post-conviction petition in state court.

Although we conclude that Cunningham may still pursue a motion for a new trial and a second post-conviction petition in state court, we emphasize that "a habeas

petitioner need not exhaust any and all remedies that are potentially available to him in state court." *Clinkscale v. Carter*, 375 F.3d 430, 439 (6th Cir. 2004). Presenting the legal and factual basis of a claim in "all levels of Ohio's standard, established appellate review process is sufficient." *Id.* However, unlike the habeas petitioner in *Clinkscale*, Cunningham has never presented the legal and factual basis of this claim to the state courts. Thus, we conclude that he has not exhausted his claim of juror bias based on Mikesell's relationship to the families of the victims.

## C. Procedural Default

A habeas petitioner's claim is procedurally defaulted if the petitioner has failed to present the claim to the state court and an "independent and adequate state ground" now bars him from doing so. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). "This court should exercise caution in finding that a state procedural rule bars" a habeas petitioner from bringing his claim in state court. *Banks v. Jackson*, 149 F. App'x 414, 418 (6th Cir. 2005). With no discussion, the district court concluded that the claim of juror-bias based on Mikesell's alleged relationship to the families of the victims was procedurally defaulted. *Cunningham*, 2010 WL 5092705, at *21. We disagree. "Because it is at least debatable whether the [Ohio] courts would entertain this claim on a second or successive motion for state postconviction relief," *Banks*, 149 F. App'x at 418, or a motion for a new trial, we conclude that the claim of juror misconduct based on Mikesell's relationship to the families of the victims is not procedurally defaulted.

## D. Stay-and-Abeyance Procedure

Cunningham encourages this court to reach the merits of his second juror-bias claim, but in the alternative, asks this court to remand the petition to the district court to stay-and-abey the proceedings and allow him to return to the state court to exhaust his claim. Appellant Br. at 28. When a habeas petitioner presents a "mixed petition" with both exhausted and unexhausted claims, we may deny an unexhausted claim if it is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). But "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially

meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics . . . the district court should stay, rather than dismiss, the mixed petition." *Id.* at 278. This is because "[i]n such circumstance, . . . the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions." *Id.*; *see also Wagner*, 581 F.3d at 419 (considering a mixed habeas petition and "not[ing] that Petitioner's claims, particularly the unexhausted claims, are not 'plainly meritless,'" so "assuming Petitioner can show good cause for failing to present these claims to the state court in the first instance, we see no reason why the district court should not grant a 'stay and abeyance' while Petitioner exhausts in state court, should Petitioner opt against dismissing his unexhausted claims." (citation and footnotes omitted)).

The Warden argues that stay-and-abeyance is inappropriate and so there is no reason to remand this petition to the district court. Appellee Br. at 50. The Warden argues that Cunningham could have brought this claim at the time of his original state post-conviction petition, but of course Cunningham did not become aware of the factual basis for this claim until he conducted discovery in the federal district court, long after his original state post-conviction proceeding. The Warden also attempts to re-litigate the question of Cunningham's diligence in uncovering the factual basis of this claim. Appellee Br. at 51–52. But in denying the Warden's motion to strike Wobler's and Freeman's depositions, the district court found "that Petitioner exercised due diligence in the State court in attempting to develop the facts" that form the basis of this claim. R. 155 (Op. Denying Mot. to Strike at 3) (Page ID #2590). The Warden has not demonstrated that this factual finding was clearly erroneous.

We conclude that Cunningham's claim of juror misconduct based on Mikesell's alleged relationship with the families of the victims is not plainly meritless. "It is well settled that the Sixth and Fourteenth Amendments guarantee a defendant on trial for his life the right to an impartial jury." *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988). The district court rejected this claim by concluding that the two jurors who Cunningham deposed were "not forced to convict Cunningham." *Cunningham*, 2010 WL 5092705,

at \*21.  But that does not address the real question raised by this claim:  did Mikesell have a relationship with the families of the victims, and if so, was she improperly biased or influenced by that relationship and her knowledge that she would have to face them and work in the community after the trial was over?[4]  Because the evidence of Mikesell's alleged relationship with the families of the victims raises grave concerns about her impartiality, we remand Cunningham's mixed habeas petition to the district court to determine whether stay-and-abeyance is appropriate.

## III.  CONCLUSION

For the foregoing reasons, we **REMAND** the habeas petition to the district court for further proceedings consistent with this opinion.

---

[4]The evidence to support this claim was developed through conducting discovery in the federal district court in 2008 and 2009, prior to the Supreme Court's decision in *Cullen v. Pinholster*, –U.S.–, 131 S. Ct. 1388 (2011).  *Pinholster* held that the federal courts' review of a state-court decision under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Id.* at 1398.  Thus, evidence developed in a federal-court evidentiary hearing prior to *Pinholster* may not be considered when the court engages in § 2254(d)(1) review after *Pinholster*. *Franklin v. Bradshaw*, 695 F.3d 439, 452 n.3 (6th Cir. 2012).  But this juror-misconduct claim has not been adjudicated on the merits (or otherwise) by the state courts, and determining whether Cunningham's second juror-misconduct claim was exhausted or procedurally defaulted is not § 2254(d)(1) review. Therefore, consideration of the affidavits and deposition testimony from Freeman, Wobler, and Mikesell for this purpose does not run afoul of *Pinholster* because it presents no danger of turning this court into "'an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'"  *Pinholster*, 131 S. Ct. at 1401 (quoting *Williams v. Taylor*, 529 U.S. 420, 436 (2000)).