In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-3489

ADAM YEOMAN,

*Petitioner-Appellant*,

*v.*

WILLIAM POLLARD,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:14-cv-00225-WED — **William E. Duffin**, *Magistrate Judge.*

ARGUED SEPTEMBER 6, 2017 — DECIDED NOVEMBER 16, 2017

Before WOOD, *Chief Judge*, and ROVNER and SYKES, *Circuit Judges*.

ROVNER, *Circuit Judge.* Adam Yeoman is serving a lengthy sentence in a Wisconsin prison after entering a plea of "no contest" to a charge of attempted first degree intentional homicide. Before filing his federal petition for *habeas corpus* relief, he exhausted some but not all of his claims in the

Wisconsin courts. In presenting his mixed petition to the district court,[1] Yeoman requested that the court enter a stay and hold his petition in abeyance so that he could return to state court and exhaust his remedies there. The court declined to enter the stay after concluding that Yeoman lacked good cause for the request. The court then dismissed the petition with prejudice, and Yeoman appeals. We affirm.

## I.

At approximately 2 a.m. on January 4, 2008, Yeoman approached a bartender and the owner of the Log Cabin Tavern as they walked through the parking lot of the Bangor, Wisconsin bar. Yeoman pointed a handgun at the pair and ordered them to the ground. Instead, they resisted. The bar owner, armed with the evening's receipts, hit Yeoman in the face with the money bag he was carrying and wrestled him for control of the gun. Yeoman repeatedly try to fire the malfunctioning gun. During the struggle, the bartender twice heard the gun click but it did not fire.[2] At one point, the bar owner directed the bartender to get into her vehicle and run over Yeoman, an action she was unable to take before Yeoman fled the scene empty-handed in a car driven by his sister. He was apprehended minutes later. Yeoman eventually entered a plea

---

[1] Yeoman consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Under section 636(c)(3) and Rule 73(c), he may take his appeal directly to this court in the same manner as any appeal from a district court judgment. We will refer to the court below as the district court.

[2] Police officers recovered ejected shells which bore marks consistent with the trigger being pulled.

of "no contest" to one count of "attempt first degree intentional homicide, repeater, use of a dangerous weapon" in the Circuit Court of LaCrosse County, Wisconsin. R. 35-7, at 20–29. Other charges against him were dismissed, although his plea agreement specified that the remaining charges would be "read-in" for the purposes of sentencing. The other charges included a second count of attempted first degree intentional homicide, attempted armed robbery with threat of force, possession of a firearm by a felon, obstructing an officer, and possession of drug paraphernalia. Yeoman signed a plea questionnaire and waiver of rights that listed his maximum penalty as sixty years' imprisonment. The court sentenced Yeoman to twenty-five years in prison and twenty years of extended supervision.

Yeoman's trial counsel filed a direct appeal for him, raising three evidentiary issues. Counsel argued that law enforcement lacked reasonable suspicion to stop Yeoman's car, that the officers failed to honor Yeoman's invocation of his right to remain silent, and that the searches of his car and his person were unreasonable. The Wisconsin Court of Appeals denied the appeal. Yeoman's attorney told him that he did not intend to file a petition in the Wisconsin Supreme Court, and no petition was filed in that court.

Yeoman then filed a *pro se* petition for a writ of *habeas corpus* in the Wisconsin Court of Appeals. He asserted that counsel on direct appeal had been ineffective for failing to file a no-merit petition for review under Wis. Stat. § 809.32(4) in the Wisconsin Supreme Court. The Court of Appeals denied the *habeas* petition because the no-merit petition process applies only to persons with counsel appointed by the State Public Defender, and Yeoman had privately retained counsel. Yeoman then

moved for reconsideration, arguing that: (1) he did not
knowingly waive his rights to a meaningful direct appeal; (2)
the court's interpretation of the no-merit petition as applying
only to indigent defendants with appointed counsel violated
equal protection; and (3) he was entitled to equitable relief
because his lawyer failed to follow through on an agreement
to file a petition for review in the Wisconsin Supreme Court.
After the Wisconsin Court of Appeals summarily rejected that
*pro se* motion, Yeoman filed a second motion for reconsidera-
tion, this time arguing that his appellate counsel, who also
served as trial counsel, was ineffective because the issues that
counsel raised on direct appeal were either frivolous or
inadequately argued. Yeoman asserted that counsel should
have instead raised three other issues, namely that: (1) trial
counsel labored under an actual conflict of interest with his
client; (2) Yeoman did not knowingly and intelligently enter
his no-contest plea; and (3) trial counsel was ineffective for
failing to inform Yeoman of any possible defenses[3] prior to

---

[3]   Yeoman apparently wished to raise the defense of "imperfect self-
defense," which may be used to mitigate first-degree intentional homicide
to second-degree intentional homicide "if a person intentionally causes a
death because of an actual belief that the person is in imminent danger of
death or great bodily harm, and an actual belief that the use of deadly force
is necessary to defend herself, even if both of these beliefs are not reason-
able." *State v. Head*, 648 N.W.2d 413, 434 (Wis. 2002); WisStat. § 940.01(2)(B).
However, Wisconsin law also provides that a "person who engages in
unlawful conduct of a type likely to provoke others to attack him or her and
thereby does provoke an attack is not entitled to claim the privilege of
self-defense against such attack, except when the attack which ensues is of
a type causing the person engaging in the unlawful conduct to reasonably

(continued...)

entering the plea, and failing to inform him of various sentenc-
ing issues. The Wisconsin Court of Appeals summarily denied
the second *pro se* motion for reconsideration as well. The
Wisconsin Supreme Court then denied his *pro se* petition for
review.

At that point, Yeoman filed a *pro se* petition for a writ of
*habeas corpus* in federal court claiming that (1) counsel was
ineffective on direct appeal when he failed to file a petition for
review with the Wisconsin Supreme Court without obtaining
a waiver from Yeoman of his right to do so; (2) Yeoman was
deprived of a meaningful direct appeal when counsel failed to
file a petition for review with the state supreme court because
that failure deprived Yeoman of an additional level of review
and prevented him from being able to seek federal *habeas*
review of the issues raised in the direct appeal; and (3) as
applied to him, section 809.32(4) violates Yeoman's right to
equal protection. In the instant appeal, Yeoman refers to these
as his exhausted claims. In the petition's request for relief,

---

[3] (...continued)
believe that he or she is in imminent danger of death or great bodily harm.
In such a case, the person engaging in the unlawful conduct is privileged to
act in self-defense, but the person is not privileged to resort to the use of
force intended or likely to cause death to the person's assailant unless the
person reasonably believes he or she has exhausted every other reasonable
means to escape from or otherwise avoid death or great bodily harm at the
hands of his or her assailant." Wis. Stat. § 939.48. Yeoman asserts that he
would have been entitled to raise this defense because the bar owner
admitted to striking him with the money bag and also admitted to scuffling
with Yeoman. It is dubious that Yeoman, the aggressor in an armed
robbery, would have been entitled to this defense under these facts.

Yeoman asked that the district court reinstate his direct appeal rights in state court.

A little more than two weeks after filing the first petition, Yeoman filed a second federal *habeas* petition (docketed under a second case number), which asserted three claims: (1) his plea was unknowing because (a) he was not informed of possible defenses to the attempted homicide counts, (b) he was unaware that the dismissed charges could be used against him at sentencing, and (c) he was unaware that sentencing enhancers were dismissed only as to the count to which he pled and not as to the counts that were read in; (2) trial counsel was ineffective (a) for not informing him of possible defenses, (b) for not objecting to the prosecutor's purported breach of the plea agreement, and (c) for not properly raising suppression issues; and (3) post-conviction counsel was ineffective for not raising the first two grounds in the second *habeas* petition on direct appeal. In the instant appeal, Yeoman refers to these as his unexhausted claims. Yeoman explained in his second *habeas* petition that he did not exhaust his state court remedies on these three claims because, "The petitioner is waiting to see if his direct appeal rights will be reinstated before filing a collateral appeal in state court." R. 1, at 8–9. For relief in the second petition, Yeoman requested that the district court enter an order allowing him to withdraw his plea. R. 1, at 12.

On the same day that he filed his second federal petition, Yeoman also filed a "Motion to Stay Petition and Hold in Abeyance." R. 2. In the motion, Yeoman explained that he was aware that he could file a motion for post-conviction relief in state court asserting that his post-conviction lawyer was ineffective for not raising certain meritorious issues on direct

appeal and for failing to adequately argue the issues that he did raise. But Yeoman asserted that this avenue for appeal presented procedural hurdles that would not be present if he could simply pursue the issues anew on direct appeal. He therefore decided that he would pursue a motion for post-conviction relief in state court only "as a last resort if his direct appeal rights are not reinstated." R. 2, at 2. Yeoman filed the second petition and concurrent motion for a stay because he was concerned that the court might deny relief in his first petition and not reinstate his direct appeal rights in state court. If that happened, he explained, he would be forced to file a collateral appeal in state court and wished to assure that he preserved his right to seek federal *habeas* review of any adverse ruling from the state courts on the so-called unexhausted claims. In sum, Yeoman filed the second "protective" petition:

> in case he is not allowed to file a petition concerning the violation of his constitutional appellate rights and a subsequent and distinct petition challenging the constitutional basis of his plea and sentencing, so that he can amend his current petition to include the issues directly attacking his conviction.

R. 2, at 2–3. He therefore asked the court to "stay and abey" his second petition until it ruled on his first petition (and appealed that ruling, if necessary), so that he could commence state court post-conviction proceedings to exhaust his remaining claims if his first petition failed.

The district court ultimately ordered Yeoman to consolidate his two cases and file one petition containing all six of his

claims. The State then moved to dismiss the petition for failure to state a claim, failure to exhaust state court remedies and procedural default. The district court noted that the petition now contained three exhausted and three unexhausted claims, and that a mixed petition may not be granted. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982) (district courts must dismiss *habeas* petitions that contain both exhausted and unexhausted claims, leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court). The court offered Yeoman two choices: he could amend his petition to remove the unexhausted claims, allowing the court to rule only on the exhausted claims; or he could return to state court to exhaust the remaining claims. The court warned that if he chose the latter option, his petition would be dismissed unless he demonstrated good cause for staying the matter and holding the petition in abeyance. R. 42.

Yeoman responded with a motion to stay and abey the unexhausted claims while he attempted to pursue reinstatement of his direct appeal rights through his first group of exhausted claims. In the alternative, he sought to stay the entire petition while he exhausted the unexhausted claims. The district court declined to enter a stay, concluding that Yeoman had not demonstrated good cause for his failure to exhaust. The court noted that Yeoman's failure to exhaust his last three claims was intentional. Yeoman decided that he wanted a federal court to determine whether he was entitled to counsel on his direct appeal to the Wisconsin Supreme Court before he returned to state court to exhaust his remaining remedies. That was an unsound strategy, the court found, and Yeoman's lack

of legal knowledge and status as a *pro se* petitioner did not establish good cause. Nor did Yeoman demonstrate good cause due to ineffective assistance of counsel; Yeoman did not assert that counsel's ineffective assistance in any way delayed or undermined his ability to exhaust his claims on collateral review. He could have exhausted all of his claims but chose to limit collateral review to his three exhausted claims in the hopes that the court would grant part of his petition. In addition to denying the motion for a stay, the court also declined to allow Yeoman to amend his petition to proceed with only the exhausted claims because those claims lacked any merit. The court also declined to issue a certificate of appealability and subsequently denied Yeoman's Rule 59(e) motion to alter the judgment.

## II.

This court granted Yeoman's application for a certificate of appealability, finding that Yeoman "made a substantial showing of the denial of his right as to whether his plea was knowing and intelligent and whether trial counsel was ineffective." We ordered the parties to address "whether the district court abused its discretion in refusing to stay Yeoman's petition while he exhausted state remedies for his unexhausted claims." As a threshold matter, this court must answer the latter question first, determining whether the district court abused its discretion in denying Yeoman a stay and abeyance. Both sides agree that if this court concludes that the district court abused its discretion, the matter should be remanded so that the district court may enter the stay, allowing Yeoman to return to state court to exhaust his remaining claims. But if we

find that the court did not abuse its discretion, the judgment must be affirmed.

District courts generally have the discretion to issues stays, but in the context of cases involving the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the court's exercise of discretion must be compatible with AEDPA's purposes. *Rhines v. Weber*, 544 U.S. 269, 276 (2005). One of the purposes of AEDPA is to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases." *Rhines*, 544 U.S. at 276 (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The finality of state court judgments is a well-recognized interest that is promoted by AEDPA. *Rhines*, 544 U.S. at 276. Moreover, "the interests of comity and federalism dictate that state courts must have the first opportunity to decide a petitioner's claims. *Rhines*, 544 U.S. at 273.

> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal *habeas* petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal *habeas* proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.

*Rhines*, 544 U.S. at 277.

For these reasons, the Court held that "stay and abeyance should be available only in limited circumstances." *Rhines*, 544

U.S. at 277. In particular, the court may grant a stay and abeyance only when the petitioner demonstrates good cause for failing to exhaust his or her claims first in state court. In instances where there is good cause, a court may not grant a stay and abeyance when the unexhausted claims are plainly meritless, or when a petitioner has engaged in abusive litigation tactics or intentional delay. *Rhines*, 544 U.S. at 277–78. The district court concluded that Yeoman met two of the three requirements for a stay and abeyance: his claims were not plainly meritless, and he had not engaged in abusive litigation tactics or intentional delay. But the court concluded that Yeoman's strategic decision, based on a misapprehension of the law, did not constitute good cause for failure to exhaust.

We cannot say that this decision amounted to an abuse of the district court's discretion.[4] Under the abuse-of-discretion standard, "we uphold any exercise of the district court's discretion that could be considered reasonable, even if we might have resolved the question differently." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 778 (7th Cir. 2013). The district court noted that Yeoman's unsound strategy of splitting his claims, based perhaps on a lack of legal knowledge, could not establish good cause because virtually any *pro se* prisoner could meet that standard. Allowing for a stay in this situation would be contrary to the Supreme Court's directive that "stay and abeyance should be available only in limited circumstances." *Rhines*, 544 U.S. at 277.

---

[4] We therefore need not address the court's conclusion that the claims were not plainly meritless and that Yeoman had not engaged in intentional delay.

Yeoman contends that a stay in his case does no harm to the goals of the AEDPA. Because he is not under a sentence of death, he has no incentive to delay execution of his sentence. On the contrary, he has every incentive to resolve his case as quickly as possible in order to overturn his conviction or shorten his term of imprisonment. Moreover, he asserts, the Supreme Court held in *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005), that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court."

But Yeoman's first argument does not account for the AEDPA's "interests of comity and federalism [which] dictate that state courts must have the first opportunity to decide a petitioner's claims," or the interest in finality, which does not apply exclusively to capital cases. Yeoman's strategy would have the effect of giving the federal courts an opportunity to remand his case to the state courts before the state courts have a chance to consider and resolve **all** of his claims. "[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Rhines*, 544 U.S. at 274 (quoting *Rose*, 455 U.S. at 518, and *Darr v. Burford*, 339 U.S. 200, 204 (1950)). The doctrine of comity "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." *Rhines*, 544 U.S. at 274 (quoting *Rose,* 455 U.S. at 518). Yeoman's strategy of splitting his claims, in short, is inconsis-

tent with AEDPA's goals of streamlining *habeas* proceedings. *Rhines*, 544 U.S. at 277.

Moreover, Yeoman misreads the Supreme Court's reasoning in *Pace*. Yeoman characterizes *Pace* as holding that a petitioner's reasonable confusion about state filing deadlines will ordinarily constitute "good cause" for a stay. He asserts that his confusion about exhaustion requirements similarly provided good cause for seeking a stay, and that the court abused its discretion here in denying him a stay. The *Pace* Court addressed the possible plight of a petitioner, trying in good faith to exhaust state remedies, who might litigate in state court for years only to find out that his claim was never "properly filed," and thus his federal *habeas* petition is time-barred. In order to avoid that predicament, the Supreme Court suggested that a petitioner seeking state court post-conviction relief could also file a "protective" petition in federal court and ask the federal court to stay and abey federal *habeas* proceedings until state remedies were exhausted. *Pace*, 544 U.S. at 416. Citing *Rhines*, the Court said that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Pace*, 544 U.S. at 416–17 (citing *Rhines*, 544 U.S. at 278 for the proposition that if the petitioner had good cause for his failure to exhaust, if his unexhausted claims are potentially meritorious, and if there is no indication that the petitioner engaged in intentionally dilatory tactics, then the district court likely "should stay, rather than dismiss, the mixed petition"). *Pace* by its own terms applies to petitioners, "trying in good faith to exhaust state remedies." 544 U.S. at 416. Yeoman, at the time he sought a stay, was trying to delay exhaustion of state

remedies on his last three claims in the hopes of instead reinstating his direct appeal rights through his first three claims. Nothing in *Pace* would support that strategy, and the district court did not abuse its discretion in finding that Yeoman's confusion was not "reasonable."

Finally, Yeoman asserts that the denial of the stay and dismissal of his claims forever precludes *habeas* review of his unexhausted claims. But any unavailability of federal review would be due entirely to Yeoman's failure to exhaust his claims in state court first. In short, there was no abuse of discretion in the district court's decision to deny the stay on the ground that Yeoman lacked good cause for failing to exhaust his claims.

AFFIRMED.